IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| BRYAN D. NORTON, II, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 230338R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed Defendant's Notice of Assessment, dated April 12, 2023, for the 2019 tax year. Plaintiff challenges Defendant's determinations: (1) disallowing deductions for his racecar driving activity on the basis it was a hobby, not a business; (2) increasing his gross income based on unreported pension income and a bank deposit analysis; and (3) disallowing most of his deductions for travel mileage and supplies for his mobile oiler business. Additionally, Plaintiff seeks to correct a misreporting of wage income on his return.

After reviewing the evidence, the court finds that Plaintiff's racecar activity was a hobby and his expenses are disallowed. Additionally, the court reduced the unreported income determined by Defendant and allowed a portion of business deductions for Plaintiff's mobile oiler business. The court also corrects Plaintiff's wage income to conform to his employer's Form W-2.

Trial was held on August 7, 2024, in the courtroom of the Oregon Tax Court. Plaintiff appeared and testified on his own behalf. Daniel Paul and Brian Collins, Assistant Attorneys General, appeared on behalf of Defendant. Jennifer O'Brien (O'Brien), auditor, testified on behalf of Defendant. Plaintiff's Exhibits 1 to 11 and Defendant's Exhibits A to O were received into evidence.

## I. STATEMENT OF FACTS

### A.    *Racecar Activity*

Plaintiff developed an interest in automobiles at an early age and spent several years building and racing his own cars.  While his racecar activities generated some revenue, he consistently reported net losses.[1]  (Def's Ex C at 6.)  Plaintiff pursued this activity after hours from his full-time job, working on racecars during the week and competing on weekends.  He did not maintain typical business records for this activity.  His business plan was to establish a reputation as a skilled racecar builder, attract work from other drivers, and win all his races.  To enhance his standing in the industry, he frequently assisted other drivers without charge.

In 2019, Plaintiff participated in two races, earning gross receipts of $1,050 while claiming expenses of $14,037.  That year, he ceased racing to transition into self-employment as a mobile oiler.  He acknowledged that his racecars rarely appreciated in value.  At trial, Plaintiff admitted that he decided to contest the hobby loss determination shortly before trial and, as a result presented minimal supporting evidence.

During the audit and subsequent conference, Defendant disallowed Plaintiff's racecar activity expenses, citing Internal Revenue Code (IRC) section 183, which governs hobby losses. Plaintiff's reported gross receipts of $1,050 were reclassified as "Other Income" on Schedule 1.

### B.    *Errors on Plaintiff's Tax Return*

####    1.    *Wages (Form 1040, Line 1)*

Plaintiff identified an error in his reported wages that had not been addressed during the audit or conference.  He testified that his actual wages were $32,349, as reflected on his

---

[1] The court was unable to determine the precise amount of gross receipts and losses because Defendant's exhibit was redacted to comply with IRS regulations, and Plaintiff did not offer any testimony on income and expenses.

employer-provided Form W-2, rather than the $39,229 he reported on his federal tax return. (Ptf's Ex 3 at 1; Ptf's Ex 2 at 1.) The auditor, O'Brien, stated that line 1 was not part of the audit review and was uncertain about the requested adjustment. She noted that a notation next to line 1, "HSH 1073," could indicate household worker income. O'Brien opined that due to incomplete bank records provided by Plaintiff, his actual employment income remained uncertain.

### 2. *Line 4b: pensions and annuity income*

Plaintiff conceded that he mistakenly reported $17,262 in pension and annuity income on his original return. (Ptf's Ex 2 at 1.) He explained that he had taken a pension loan while employed, which became payable—or deemed paid—upon his separation from the company. As a result, he accepted the adjustment to include an additional $13,032 in pension income, leading to a revised total of $30,294. (Ptf's Ex 1 at 11.)

### C. *Mobile Oiler Business*

### 1. *Gross receipts*

Plaintiff launched his mobile oiler business in summer of 2019. He modified a used trailer to provide mobile oil and mechanical services for heavy machinery on-site. (Ptf's Ex 9 at 1.) He reported $9,106 in gross receipts from the mobile oiler business on his tax return. (Ptf's Ex 2 at 7.) However, during trial, Plaintiff and Defendant agreed to revise this amount to $16,787 based on customer invoices. (Def's Ex C at 8; Def's Ex J.)

### 2. *Supplies*

Plaintiff claimed $9,586 in supply expenses for the mobile oiler business on his tax return but at trial provided forty-nine receipts totaling $9,153.[2] (Ptf's Ex 2 at 7; Ptf's Ex 9.) The

---

[2] The court has rounded these numbers.

auditor verified that $1,400 in expenses had been paid through Plaintiff's bank account and allowed them. (Def's Ex C at 9.) However, $1,164 in cash payments were disallowed due to a lack of documentation. Additionally, $6,589 in expenses paid via unidentified credit/debit cards or third parties were also disallowed, as Plaintiff did not substantiate reimbursements for those third-party payments. Plaintiff testified that the third-party payments were made by family members, but he had no proof of reimbursement payments. (Ptf's Ex 1 at 9.) Additionally, some receipts contained a different business name, leading to further scrutiny and denial of expenses.

The court's review found that receipts in Exhibit 9, pages 2 to 17, totaling $3,110, were traceable to Plaintiff's bank accounts. The remaining receipts lacked sufficient substantiation.

3.      *Car and truck expenses*

Plaintiff did not initially claim vehicle expenses for his mobile oiler business. At trial, he asserted that $3,283 in travel expenses had been mistakenly reported under his racecar activity instead. (Ptf's Ex 2 at 5-7.)

As Plaintiff lacked a contemporaneous mileage log, he reconstructed one using Google Maps and his invoices. (Ptf's Ex 7.) His re-created log documented 1,806.6 travel miles. The auditor disallowed miles linked to expenses paid by third parties or from unverified sources, ultimately allowing 1,037 miles. Using the applicable mileage rate of $0.58 per mile, the auditor permitted a travel expense deduction of $601. (Def's Ex K at 1.)

D.      *Bank Deposit Analysis*

To verify Plaintiff's income, the auditor conducted a bank deposit analysis. This method involved summing all deposits during 2019 and subtracting nontaxable items such as transfers and loans. Any unexplained amounts were flagged for clarification. (Def's Ex C at 10.) The auditor and conference officer each requested complete statements for all of Plaintiff's bank

accounts and credit/debit cards. Plaintiff provided only partial records, none of which substantiated his employment wages, pension income, or business revenue and expenses. He testified that he had withheld some bank statements based on advice he received.

The auditor identified $23,196 in unexplained deposits and requested clarification. As Plaintiff failed to provide supporting documentation, this amount was added as unreported income. (Def's Ex C at 10; Def's Ex L at 1-2.) The conference officer later reduced this figure to $6,409 to account for the revised Schedule C income. (Def's Ex H at 3.)

At trial, Plaintiff introduced six checks, previously categorized as "unidentified" totaling $14,912.84.[3] (Ptf's Ex 4 at 2-7.) He also presented a check from his father for $4,000, of which $1,800 was noted as a loan.

## II. ANALYSIS

There are four issues before the court: (1) whether Plaintiff's racecar driving activity constituted a business or a hobby; (2) whether errors on Plaintiff's tax return, which were not part of the audit, should be adjusted; (3) whether Plaintiff has substantiated deductions for travel mileage and supplies for his mobile oiler business; and (4) whether Plaintiff had unreported income.

The adjudication of Oregon income tax cases rely on several core principles of the state's income tax framework. First, Oregon's personal income tax law is intended to be identical in effect to the federal Internal Revenue Code (IRC) for determining an individual's taxable income. ORS 316.007.[4] Second, in cases before the Tax Court, the party seeking affirmative

---

[3] Unidentified deposits are listed on Plaintiff's Exhibit 4 at page 1 and 9. There are two discrepancies between the list and the checks. A deposit is listed on November 26, 2019, at $2,531.12, however, the only check presented was in the amount of $2,439.18. (Ptf's Ex 4 at 4.) Second, the list shows a $510.63 deposit on December 20, 2019; however, Plaintiff's deposit and check show the amount was $810.63.

[4] The court's references to the Oregon Revised Statutes (ORS) are to the 2017 version.

relief bears the burden of proof and must establish their case by a "preponderance of the evidence." ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of substantiation is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). The court begins its analysis by considering whether Plaintiff's racecar driving activity was a business or a hobby.

A.      *IRC Section 183 – Hobby Loss*

Under IRC section 162(a), taxpayers may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" However, IRC section 183 prohibits deductions for activities not engaged in for profit, except as provided under that section. Generally, deductions are not allowed for activities which are carried on primarily as a sport, hobby, or for recreation. Treas Reg §  1.183-2(a).

Whether an activity is engaged in for profit is determined by objective standards, considering all facts and circumstances. An activity is "engaged in for profit if the taxpayer's 'predominant, primary or principal objective' in engaging in the activity was to realize an economic profit independent of tax savings." *McMillan v. Comm'r*,105 TCM (CCH) 1263 (2013), 2013 WL 461640 at \*4 (US Tax Ct) (quoting *Wolf v. Comm'r*, 4 F3d 709, 713 (9th Cir 1993)). Although a reasonable expectation of profit is not required, the facts must indicate that the taxpayer entered into or continued the activity with the objective of making a profit. Treas Reg § 1.183–2(a); *see Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987).

/ / /

/ / /

The IRS provides a non-exhaustive list of nine factors to be considered when determining whether an activity is engaged in for profits, six of which are relevant to this case:

the manner in which the taxpayer carries on the activity;
the time and effort the taxpayer expended in carrying on the activity;
the expectation that the assets may appreciate in value;
the history of income or losses with respect to the activity;
the amount of occasional profits, if any, which are earned; and
elements of personal pleasure or recreation.

Treas Reg § 1.183-2(b).

Plaintiff spent limited time working on his racecar during the week and kept no business records. He raced only a few weekends, sometimes volunteering to assist other drivers. In 2019, he raced on only two occasions, opting instead to focus on his mobile oiler business. Plaintiff testified that his cars depreciated in value, and the evidence showed only a history of losses. His occasional gross receipts from racing were nominal compared to his expenses. He also admitted that he raced for personal enjoyment.

Plaintiff decided to contest the hobby loss issue only shortly before trial and did not present substantial evidence. Based on the evidence, the court finds that he failed to establish that his racecar activity constituted a business rather than a hobby. Accordingly, his gross earnings of $1,050 are considered other income. Additionally, Plaintiff is not eligible to deduct expenses related to his hobby pursuant to IRC section 67(g), which suspends miscellaneous itemized deductions for taxable years 2018 through 2025.

B.    *Errors on Plaintiff's Tax Return*

Plaintiff seeks to correct errors on his tax return related to his employment income, which he identified just before trial. This item was not part of the initial audit. He asserts that his employment income should be adjusted to match his Form W-2, which reported $32,349. Defendant argues that a notation on Plaintiff's tax return – "HSH 1073" appearing near his

reported employment income – might indicate untaxed household income. Defendant further contends that Plaintiff's actual employment income remains uncertain because he failed to provide complete bank records during the audit, conference, or trial.

While the absence of complete records raises uncertainty about Plaintiff's gross receipts, Defendant's assertion regarding potential household income is at best speculative. The court finds that Plaintiff's form W-2, along with his testimony that he had a single employer, is more persuasive. Thus, Plaintiff's employment income on Form 1040 line 1 is adjusted to $32,349.

C.      *Mobile Oiler Business*

At trial, the parties agreed that the gross receipts for Plaintiff's mobile oiler business, based on customer invoices, totaled $16,787. However, Defendant disputed the amount and deductibility of business expenses related to car and truck mileage and supplies.

1.      *Car and truck mileage*

While reasonable business expenses are generally deductible, personal automobile expenses require a heightened level of substantiation. *See* IRC §§ 162, 274(d). A deduction is allowed only if the taxpayer provides adequate records or sufficient corroborating evidence detailing the mileage, date, and business purpose of each trip. IRC § 274(d); Treas Reg § 1.274–5T(b)(6). The "adequate records" requirement is met by maintaining a mileage log or similar record. Treas Reg §§ 1.274–5T(c)(2). A mileage log, while not required to be contemporaneous, carries greater credibility if created "at or near the time of the expenditure or use." *See* Treas Reg § 1.274–5T(c)(1).

Plaintiff did not maintain a contemporaneous mileage log, and instead, re-created his business miles using his invoices and receipts, supplemented with Google Maps calculations. While this method is not inherently improper, the court finds issues with his approach. Many of

the receipts associated with his claimed travel miles were paid for by unknown sources or third parties. As a result, his reconstructed log lacks sufficient corroboration. The court agrees with the Defendant that only the transactions Plaintiff personally paid for can be correlated with his business travel. Accordingly, the court allows 1,037 miles at the federal rate of $0.58 per mile, resulting in a total travel deduction of $601.

2. *Supplies*

Plaintiff presented 49 exhibits documenting supply expenses. While receipts are generally considered strong evidence, the court finds several issues requiring heightened scrutiny. Plaintiff did not submit all of his bank statements. This was significant because some receipts contain the same debit card number but were drawn from either Plaintiff's account or his brother's.[5] Additionally, some receipts listed a different business name. Given these discrepancies, the court only allows supply expenses supported by both a receipt and proof that the funds originated from Plaintiff's accounts. Based on the court's review, a total of $3,110 in supply expenses are allowed as business deductions.

D. *Bank Deposit Analysis*

"Gross income" is defined as "all income from whatever source derived * * *." IRC § 61(a). Defendant may establish the existence of unreported income "by any practical method available in the circumstances of the particular situation." *Flowers v. Dept. of Rev.,* 16 OTR–MD 151, 153 (1999) (citing *U.S. v. Doyle,* 234 F2d 788, 793 (7th Cir 1956)).

/ / /

/ / /

---

[5] Debit card ending in 8088 led to debits from not only Plaintiff's account (see Ptf's Ex 9 at 2 -17) but also his brother Troy's account (see Ptf's Ex 10 at 14).

A reasonable reconstruction of income, such as a bank deposit analysis, while not conclusive as to the amount of income, is accepted as correct unless proven otherwise. *Ottuso v Comm'r*, TCM (RIA) 2024-091, 2024 WL 4298072 (2024).

At trial, Plaintiff presented copies of six checks totaling $14,912.84, which were already included in his Schedule C income from his mobile oiler business. He also provided a check from his father for $4,000, with a notation indicting that $1,800 of that amount was a loan. Of the $20,746.88 in unidentified deposits found by the auditor, Plaintiff has substantiated $16,713 as either already included in Schedule C income or as a loan. The remaining $4,034 in unidentified deposits is presumed to be income.

### III. CONCLUSION

After careful consideration of the evidence, the court finds that Plaintiff's racecar activity was a hobby under IRC section 183, as he failed to establish a profit motive. His lack of business records, history of losses, and testimony about racing for personal pleasure support this conclusion. Consequently, the $1,050 in racecar earnings is classified as other income, and deductions related to the activity are denied pursuant to IRC section 67(g).

Regarding Plaintiff's tax return errors, the court finds his Form W-2 and testimony persuasive, adjusting his reported wages to $32,349. The court also accepts the corrected pension income figure of $30,294.

For the mobile oiler business, the court allows $3,110 in supply expenses that were substantiated through Plaintiff's bank records. Travel expenses are limited to 1,037 miles, amounting to a deduction of $601.

/ / /

/ / /

Finally, based on trial evidence, the court reduces Plaintiff's unreported income to $4,034, reflecting the checks introduced at trial that were verified as already included in Schedule C income. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted in part and denied in part. The court finds in favor of Defendant on the hobby loss and unreported income issues but grants adjustments to Plaintiff's wages and allowable deductions as detailed above.

IT IS FURTHER DECIDED that Defendant shall re-calculate Plaintiff's tax liability and also adjust AGI sensitive deductions accordingly.

_____
RICHARD D. DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on April 22, 2025.*